UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 2:14-mj-00107

GARY L. SOUTHERN,

    Defendant.

## MOTION TO RECUSE OR DISQUALIFY

Now comes Gary Southern ("Mr. Southern") and respectfully moves this Honorable Court to disqualify the United States Attorney's Office for the Southern District of West Virginia, its agents and investigators from further participation in this case, either directly or indirectly. The United States Attorney's Office should have recused itself and should now be disqualifed for two reasons: first, the Office and its staff and employees have an actual conflict of interest and second, even if no actual conflict is found by the Court, there is an appearance of a conflict of interest or loss of impartiality that requires recusal/disqualification of the Office.

## FACTS

In a Criminal Complaint filed on December 8, 2014, the United States charged Mr. Southern with a violation of 18 U.S.C. 157 (Bankruptcy Fraud), a violation of 18 U.S.C. 152 (False Oath in Bankruptcy Case) and a violation of 18 U.S.C. 1343 (Wire Fraud). The Complaint was based on the Affidavit of James F. Lafferty, II, FBI Special Agent. The Affidavit alleges that Mr. Southern engaged in these acts primarily to downplay his involvement with

Freedom Industries and according to the Affidavit protect his personal wealth during various civil proceedings and the Chapter 11 Bankruptcy proceedings related to Freedom Industries and filed as a result of the January 9, 2014, chemical spill.  The entire thrust of Mr. Lafferty's Affidavit are allegations that Mr. Southern made false or deceptive statements in an effort to protect his assets from any judgment(s) rendered in the myriad of civil cases that have been filed and from any claims made in the bankruptcy proceedings. Clearly, one of the Government's primary goals is to ensure that Mr. Southern's assets and wealth will be available to pay the plaintiffs in any civil action(s) in which they prevail and to pay claimants and creditors in the bankruptcy proceedings.

Each and every one of the charges against Mr. Southern is directly related to the chemical spill which affected over 300,000 residents for an extended period of time and to the pending civil actions and related bankruptcy proceedings filed as a result of the spill. While not accused of causing the spill, the clear inference of the Affidavit is that Mr. Southern is responsible.

Without question, every person in the United States Attorney's Office was an actual victim of the chemical spill and is a putative claimant in one or more of the class actions that have been filed, the bankruptcy proceeding and a potential beneficiary of any restitution that is ordered as a result of the criminal charges.[1] Moreover, regardless of any pecuniary loss, every person in the United States Attorney's Office suffered the same inconveniences and hardships as the other 300,000 plus victims of the water crisis.

The impact of the chemical spill was widespread. Everyone at the United States Attorney's Office was affected at work and many of them, including their families, were affected

---

[1] 18 U.S.C. Section 3663A establishes when crime victims are entitled to mandatory restitution. In relevant part, Section 3663A(c)(1)(B) states: "This Section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for any offense in which an identifiable victim or victims has suffered a physical injury or pecuniary loss."

at home. On January 9, 2014, Governor Tomblin declared a "state of emergency" in nine counties and advised people in Kanawha and eight surrounding counties NOT to use tap water for "drinking, cooking, washing or bathing." The federal government declared the areas affected as a disaster and the West Virginia National Guard distributed bottled water to emergency services agencies in Kanawha and numerous other counties.  Businesses, restaurants and state, local and federal offices were shut down, and water distribution centers were opened. Hospitals, nursing homes, and schools were prioritized by the National Guard to first receive water and supplies through emergency services.

In addition to the inconvenience and related hardships suffered by residents of the Kanawha and adjacent counties such as loss of work and normal household conveniences, the West Virginia Department of Health and Human Resources identified health symptoms that could manifest from exposure to the chemical.  There were many victims of the water crisis, and many still remain concerned about the long term effects from exposure to the chemical.  All of this adds to pressure on the United States Attorney's Office to find someone to prosecute and hold responsible.

As previously mentioned, every employee of the United States Attorney's Office was in the same position as everyone else mired in the ordeal and thus, they and their families are actual victims. The federal courthouse was closed for a period of time due to lack of water.  Every employee of the Office was exposed to the same inconveniences, hardships and pecuniary losses as the others included in the 300,000 people who were affected. At that time, the entire Kanawha Valley was concerned about the potential health risk of the contaminated water. Nobody that worked in the United States Attorney's Office was immune from those hardships and concerns. Not only were they unable to work for a period of time, they could not drink, cook, bathe, wash

with, or otherwise come into contact with the contaminated water. They smelled the licorice-like odor from the chemical and shared the same concerns about the immediate and long term effects of being exposed to the chemical not only for themselves but for their spouses and their children.[2] Everyone exposed to the chemical was concerned.

## ARGUMENT

The United States Attorney, members of his staff, investigators and agents involved in the prosecution of Mr. Southern must remain impartial because they are unlike any other litigant or potential litigant. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). This principle applies to every person who works in the United States Attorney's Office.

Due to the fact that the United States Attorney's Office has an actual conflict of interest, it should be disqualified from further participation in this case. Here, the United States Attorney's Office can be no less fair and impartial in making charging decisions and pursuing a prosecution than a prosecutor who has charged a person whom he believes has harmed him and his family, or whose actions have caused the prosecutor to suffer pecuniary loss. In this case the

---

[2] One of the remedies sought in the class actions is medical monitoring for any persons exposed to the contaminated water; this could be quite costly. Even if any person associated with the United States Attorney's Office were not monetarily affected by the leak, they would certainly be interested in seeing that any subsequent medical monitoring that might be ordered in the future was adequately funded. *See, e.g., Good, et al. v. American Water Works Company, Inc., et al.*, Case No. 2:14-CV-01374 (S.D.W. Va.), paragraph 1, subparagraph 14 of the Prayer for Relief of the First Amended Consolidated Class Action Complaint.

United States Attorney's Office is pursuing a prosecution against a man it believes and maintains is responsible for the ordeal they and their families suffered.

It is so plainly obvious that members of the United States Attorney's Office suffered the same experiences during the water crisis as all other victims that even the media has recognized this. For example, when United States Attorney Booth Goodwin went on state-wide talk radio to discuss the arrest of Gary Southern with host Hoppy Kerchaval on December 9, 2014, the following exchange occurred:

> Mr. Kercheval: This was a huge deal. You lived there. You're among those who couldn't use the water. A lot of West Virginians couldn't use the water. This is a big deal. This is a big deal, and so that's the latest step on that. That's not much of a question, that's just a comment.
>
> U. S. Attorney Goodwin: Sure.[3]

The Department of Justice's Principles of Federal Prosecution set forth guidelines with which prosecutors must comply in determining whether to commence or recommend prosecution or take other action against a person. The Principles clearly state that the attorney for the government should not be influenced by:

1. The attorney's own feelings concerning the person, the person's associates, or the victim; or

2. The possible effect of the decision on the attorney's own professional or personal circumstances. USAM Chapter 9-27.260.

It simply defies credulity that the United States Attorney's Office brought the instant charges against Mr. Southern and remained in compliance with its own guidelines. When prosecutors ignore Department policies that work to ensure the fair and impartial administration of justice, the power of the federal government can be used to vindicate and promote personal interests, which results in justice being perverted and personal gain.

---

[3] *See* Exhibit A.

In *United States v. Sigillito*, 759 F.3d 913 (8th Cir. 2014)(*rehearing and rehearing en banc denied*, Sept. 15, 2014), the Court addressed the issue of an interested prosecutor:

> Prosecutors are permitted to be zealous in their prosecution of a crime. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). However, prosecutors must be disinterested such that they may not represent the United States "in any matter in which they, their family, or their business associates have any interest." *Id.* at 803, 107 S.Ct. 2124 (citation omitted). This is because "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (citations omitted). As a result, the presence of an interested prosecutor is a fundamental error that "undermines confidence in the integrity of the criminal proceeding." *Young*, 481 U.S. at 810, 107 S.Ct. 2124 (citations omitted). Because of the fundamental nature of this error, we do not conduct a harmless-error or prejudice analysis. *Id*. at 811-12, 107 S.Ct. 2124.

The Court in *Sigillito* found that no actual conflict of interest existed because the attorneys trying the case had "no personal or financial interest at stake in the outcome of the prosecution" and the prosecutor with supervisory authority who had an interest in the case was not shown to exercise any authority over the case or participate in the prosecution. 759 F.3d at 928.[4] The same cannot be said here where the United States Attorney and every employee of his Office has an actual conflict of interest and it is the United States Attorney himself who has been front and center in the investigation and prosecution of Mr. Southern according to his public pronouncements and statements. *See, e.g.,* Exhibit A.

---

[4] In *Sigillito*, the victim was the cousin of the interested prosecutor in the Eastern District of Missouri. Because of perceived bias, the entire Eastern District of Missouri recused itself. However, two attorneys from the District assisted the Western District of Missouri in trying the case. The interested prosecutor played no part in the prosecution. Further, the interested prosecutor was not the United States Attorney; he was an attorney employed in an allegedly supervisory capacity. Thus, the conflict in *Sigillito* was much less than the facts of this case.

Alternatively, even if the Court finds that the United States Attorney's Office does not have an actual conflict, there can be no dispute that there is an impermissible appearance of a conflict of interest or partiality that requires disqualification because the United States Attorney and his entire Office were affected by the chemical spill into the water.

Title 3 of the United States Attorney's Manual, Section 3-2.170, addresses this issue:

> When United States Attorneys, or their offices, become aware of an issue that could require a recusal in a criminal or civil matter or case as a result of a personal interest . . . in the matter, they must contact General Counsel's Office (GCO), EOUSA.  The requirement of recusal does not arise in every instance, **but only where a conflict of interest exists or there is an appearance of a conflict of interest or loss of impartiality.** (Emphasis added).[5]

Courts have addressed the appearance issue. *See, e.g.*, *United States v. Johnston*, 690 F.2d 638 (7th Cir.1982) (There is a broad concern for public confidence in the administration of justice; justice must satisfy the appearance of justice.)  *See also, Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 1697 (1988) (Federal courts have an obligation to ensure that legal proceedings appear fair to all who observe them.)

Appearance of loss of impartiality is shown by singling out and charging Mr. Southern with wire fraud based on an ECF filing of his attorneys, when the Government was fully aware that it was Mr. Southern's attorneys who made the filing, not Mr. Southern, and in doing so the Government has attempted to deprive Mr. Southern of his Sixth Amendment right to counsel of his own choosing. Mr. Southern's attorneys wrote the filing on which the wire fraud charge is based and Mr. Southern did not recommend the wording in that filing. Further, Mr. Southern's attorneys had no choice but to use the ECF system in making their filing and finally, no

---

[5] This is not an unusual occurrence.  The Department of Justice routinely steps in when a local office has a conflict of interest.  Justice will not be denied and the investigation will not end – the case will simply be handled by prosecutors who do not have a personal interest in the matter.

investigator questioned Mr. Southern's attorneys about who had written the filing before using it as the basis of a wire fraud charge. Without question, the wire fraud charge supports the appearance of loss of impartiality.

In addition, the fact that Mr. Southern was arrested at his home in Florida on December 8, 2014, without notice to his attorneys when the Government knew he was represented by counsel, and without any factual basis to believe he was a flight risk, again shows loss of impartiality or the appearance thereof. As unbelievable as it may be, the Affidavit and subsequent arrest are based in part on a bank transfer to an annuity account that occurred over ten months ago and which was part of Mr. Southern's estate planning which has been ongoing for an extended period of time. There was no justification for using this transfer as a basis for his arrest. Further, Mr. Southern's accountants, with his permission, opened his books to the FBI several weeks ago. This again, shows loss of impartiality as well as the appearance thereof.

In a criminal case, courts have the greatest responsibility to ensure and preserve trust, and to maintain the integrity of the process which includes disqualifying a United States Attorney's Office when necessary. Disqualifying a United States Attorney's Office is clearly necessary when it has a personal and financial stake in the matter, and when members of the office and their families stand in the same positon as every other victim.

As previously stated, the employees and staff of the United States Attorney's Office in Charleston have a pecuniary interest in the outcome of this case that again, if not an actual conflict at least shows an appearance of loss of impartiality; they are among the 300,000 residents who were affected by the water crisis and thus, are included in the potential class of plaintiffs in the various civil actions that have been filed as well as claimants in the bankruptcy proceedings. They have incurred pecuniary losses as a result of the spill. There is also an issue as

to whether certain employees stand to gain from prosecution of the civil actions due to their family relationships.

How can the integrity of a prosecution be maintained when courts meticulously question a jury panel to ensure that only those selected can sit as fair and impartial jurors, yet members of the prosecuting authority can hold the same views that would have resulted in them being dismissed for cause? No prosecutorial body can be left to police itself. "The paramount concern is the judiciary's independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *United States v. Urutyan*, 564 F.3d 679 (4th Cir. 2009) *citing Wheat v. United States, supra.*

Under these circumstances, criminal proceedings against Mr. Southern cannot and will not "appear fair to all who observe them." Special Agent Lafferty's Affidavit focuses on Mr. Southern's wealth. It appears he has been singled out because of that wealth in an effort to preserve his assets for plaintiffs and claimants in the bankruptcy proceedings who were harmed by the chemical spill. This includes the United States Attorney's Office employees, agents and investigators. *See* Exh. A.

Finally, an unbiased third party would question whether Mr. Southern is being overcharged or charged too aggressively and being prosecuted for acts related to the chemical spill to vindicate personal interests or placate the victims of the water crisis – many of whom are friends and relatives of members of the United States Attorney's Office – or to gain access to his personal wealth for those who suffered through the ordeal. Unequivocally, the investigation that was undertaken and led to the prosecution was initiated by the United States Attorney's Office whose point of view is that of a victim, not an unbiased prosecutor.

WHEREFORE, for the reasons stated above, Defendant Gary L. Southern respectfully moves that the United States Attorney's Office for the Southern District of West Virginia and agents and investigators working for that Office be disqualified from further participation in the investigation and prosecution and that no further action be taken until this Motion is ruled upon.

GARY SOUTHERN,

DEFENDANT,

By Counsel:

/s/ Robert B. Allen
ROBERT B. ALLEN (WV Bar No. 110)
PAMELA C. DEEM (WV Bar No. 976)
SAMUEL D. MARSH (WV Bar No. 6746)
KAY CASTO & CHANEY PLLC
P.O. Box 2031
Charleston, WV 25327
(304)345-8900
rallen@kaycasto.com
pdeem@kaycasto.com
smarsh@kaycasto.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No. 2:14-mj-00107

GARY L. SOUTHERN,

    Defendant.

## CERTIFICATE OF SERVICE

I, ROBERT B. ALLEN, counsel for Defendant, hereby certify that on the 15th day of December, 2014, I electronically filed the foregoing "Motion to Recuse or Disqualify" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    R. Booth Goodwin II
    United States Attorney
    Office of United States Attorney
    E-mail:  booth.goodwin@usdoj.gov

    Philip H. Wright
    Assistant United States Attorney
    Office of United States Attorney
    E-mail:  philip.wright@usdoj.gov
      *Counsel for United States*

        /s/ Robert B. Allen
    Robert B. Allen (WV Bar No. 110)
    KAY CASTO & CHANEY PLLC
    1500 Chase Tower
    707 Virginia Street, East
    P.O. Box 2031
    Charleston, WV  25327
    rallen@kaycasto.com